16-7129 Houshang H. Momenian, et al. Appellants v. Michael M. Davidson Mr. Hogue for the appellants, Mr. Markels for the appellee Good morning. Good morning. Is it Hogue? Hogue, yes. Christopher Hogue. And may it please the court, Judges Pollard, Wilkins, and Judge Silverman, and Mr. Markels, I would like to reserve two minutes for my rebuttal, please. I don't intend to go into the convoluted facts of the underlying transactions that gave rise to this lawsuit, other than to say that it involved a series of real estate-related transactions between Mr. and Mrs. Momenian, my clients, and a Mr. and Mrs. Interdonato, in which Mr. and Mrs. Momenian claimed that they did not get proper credits for certain payments that were made against their obligations under those loans. Mr. Davidson, the appellee on this matter, represented the Momenians in a lawsuit against the Interdonatos in the Superior Court, and he basically claimed that, on behalf of the Momenians, that the Interdonatos had not given the credits that Mr. Momenian was entitled to and were sued for hundreds of thousands of dollars in damages. He thereupon filed, after discovery and settlement negotiations, he filed a settlement for suppressive fee, which basically indicated a settlement which granted Mr. and Mrs. Momenian a $15,000 credit against their obligations and dismissed the case with prejudice. And the gravamen of the complaint against Mr. Davidson is that he misled Mr. and Mrs. Momenian, specifically Mr. Momenian, with whom he was primarily dealing, and led Mr. Momenian to believe that the case was only partially settled and that there were other substantial aspects to the lawsuit that would live on. How did he lead them to believe that? He led him to believe that through various conversations that he had subsequent to the filing of the settlement for suppressive fee. Mr. Momenian alleged in the amended complaint that he would talk to Mr. Davidson roughly every three months to ask about the status of the case, and Mr. Davidson would tell Mr. Momenian that he was still working on the case. Mr. Davidson sent a bill to Mr. Momenian in May. Working on the case? Working on the case? Yes. Was that the exact language? We don't know the exact language, Mr. Momenian. He was working on that. Working on that, yes, Your Honor. Not working on the case, necessarily. Well, by that, certainly, Mr. Momenian. I know that's your argument, but I just wanted to make sure you stated it accurately. Well, Your Honor, nobody has deposed Mr. Momenian in this case. There haven't even been any interrogatories. No, I'm just talking about what your complaint says. What my complaint says is that he was working on that. That's correct. Referencing the Interdonado lawsuit. There was also a bill that's referenced in the amended complaint that was sent to Mr. Momenian that references the Interdonado lawsuit, and there was also a conversation that took place that was recorded by Mr. Momenian legally in a restaurant in Virginia in which Mr. Momenian was obviously asking a lot of questions about the Interdonado matter. The transcript is a little bit of a dense read. Mr. Momenian is not the most fluent in the language, and it's not a model of clarity, but clearly Mr. Momenian is asking why he now knows from a foreclosure action that has been filed by the Interdonados that the case has not been resolved, that he's still on the hook for a very substantial amount of money. And he asked Mr. Davidson, why did you forfeit my rights by means of this precipice? And Mr. Davidson, even at that point, was saying, I didn't forfeit all your rights. You still have some rights, even though the case was long since closed. Mr. Howard, what's your best authority for the notion that a reasonably diligent individual does not need to check public records to determine the status of a matter? Well, Your Honor, I don't know that I have good authority that says directly that a litigant doesn't need to investigate. I would turn the question around a little bit respectfully and say there's no authority that says under these types of circumstances a litigant has an obligation to do what the trial court said he must do and what an appellee says he must do, which is to check the court docket, to check with another lawyer, to basically go behind what he represents. But your client signed the precipice, right? The client did sign the precipice. And the precipice said dismissed with prejudice. No question about that, Your Honor. But as Judge Meda said in the first order that he signed, memorandum opinion that denied, well, granted the initial motion to dismiss but gave me leave to amend the complaint. In the course of that opinion, Judge Meda said what I think is true, which is that you can't simply assume that Mr. Momenian understood what a dismissal with prejudice meant, that that's not the type of terminology. Is it really not so much the phrase with prejudice as it is the scope of the settlement that your client is claiming is confusing? Both. I think it was both. I think my client believed that the case was going to live on because if you look at the transcript of the conversation and if you look at the amended complaint in which I've made this allegation, Mr. Momenian believed that an accountant was going to be appointed by the court and would come in and try to do an audit of the dealings between him and Mr. Inez Arrado. Excuse me. Is your strongest argument here that the reasonableness of your client's behavior is a jury question? That is certainly a very strong argument. I'd say that is a strong argument. Here's the way I've tried to articulate what I think is the nub of the issue, Your Honor, and that is can the trial court or this court rule as a matter of law that the Momenians were on notice of the malpractice, the alleged malpractice, without identifying a discreet event that occurred subsequent to the filing of the precipe that would have put him on such notice? Judge Maida has already ruled, and we endorse this ruling, that the precipice itself did not put him on such notice just because the words with prejudice were in that precipice. What about the authority in the District of Columbia Court of Appeals here? Do you think the authority is up in the air? There's some confusion? No, I don't think there's much confusion at all. Arguably, there are two cases that may point in different directions. Well, Diamond v. Davis, which seems to be the lead case that's relied on by the court and by both sides, I think very much cuts in our favor, and the reason is that in Diamond v. Davis, there were three documents that made it clear that Mr. Diamond was on notice of the fact that his lawyer, Mr. Davis, was representing the Reynolds family. No, I mean on the question of whether the reasonableness of the plaintiff in a situation like this is a question of fact or a question of law. I don't see any case that says it is a question of law. Well, Your Honor, is it clear that it's a question of fact? It's clear to me that it's a question of fact. Is it clear under D.C. law? It's clear under D.C. law, I would submit, that it's a question of fact, that it's not susceptible of resolution without doing discovery and getting testimony. Well, that's a slightly different point, and I actually understood it more as you just started to describe it. If we knew that the facts were as they are alleged, in other words, if those had been established at summary judgment beyond dispute or by trial, wouldn't the question of what counts as reasonable diligence on those facts be a question that court could resolve? In other words, if I have a lawyer and I have checked with my lawyer at a periodicity that is reasonable and gotten assurances, would that be a question for court to say a fiduciary duty in that situation satisfies the diligence or not? Well, I suggest that it's a mixed question of law and fact. I think that you have to develop the facts through discovery. That's a little bit different than saying the reasonableness itself, as in, for example, negligence is a jury issue versus reasonableness in, let's say, probable cause being a legal issue. And I guess I'm just trying to figure out which is your position, the reasonableness as such, assuming that we had a factual record that was tested to the appropriate procedural stage. Well, whether you're talking about negligence or probable cause at a preliminary hearing or reasonableness of investigation in this case, it seems to me that first you have to develop the facts and find out precisely what happened, and then you, of course, apply the law to that to ascertain whether under precedent the facts give rise to a finding of reasonableness. And I guess my question is, assuming the first part of your argument that, yes, the facts need to be developed if you've pleaded to show that you're entitled, that the facts are material, assuming that, then that layer of reasonableness, is that something that is for a court or for a jury? I think that's for a jury. I think it's for a jury to determine justice. You mean analogous to negligence? I think it's analogous to negligence and not analogous to probable cause, which is an interim type of a process. I think my time is up. Was any request made of the trial court to take limited discovery on the issue of notice or diligence, et cetera? No, Your Honor. We just have the allegations in the amended complaint because I did not make such a request. I have a question. Why did you bring this case in federal court? I did. Why didn't you bring it up? You were not a lawyer at that point? It was removed. I brought it in the superior court and it was removed. I see. I see. that it be citizenship, meaning residence and an indefinite intention to remain, and we've actually held that allegation of residence alone is insufficient. So is there a defect in diversity? Your Honor, I think that's actually a question for my counterpart. I have no particular preference as to whether this – I filed in superior court. I'm fine with having the case litigated in superior court. I don't have any investment in, as much as I like this court, I don't have any particular investment in the case being here. You might like the other court better. I have – well, it was not a forum shopping exercise, Your Honor. It seemed to me that it was a local court type of a controversy, and that's why I filed it there, and you'll have to ask my counterpart as to why he chose to remove it. But, I mean, on a serious matter, I mean, we have to determine whether we have subject matter jurisdiction. I quite agree. We can't dodge the question. I don't disagree with that, Your Honor. So you kind of dodged Judge Pillard's question about residency. Well, I'm not arguing for the jurisdiction of the federal court. That's why I dodged – maybe dodged it a little bit more. Yes, but nevertheless, we have to answer that question, so we ask counsel. You have to have a view of that. Your Honor, nobody has ever – I mean, as far as I know, Mr. Momenian is a resident and has been a longtime resident. He owns a home in Maryland. I think I alleged that in the amended complaint, but I'm not sure. And then we know that Mr. Davidson is a resident of Virginia. You know, those are the facts that I'm aware of. But, again, I didn't allege diversity in my initial complaint. That's been alleged by my counterpart. Mr. Momenian has a home in Maryland but also in D.C.? Business in D.C. Business in D.C. His business is in D.C., Your Honor. He's a merchant who has had a business in the District of Columbia for a long time, but he's resided in Maryland for as long as I've known him, which is a few years now. So I'm not sure that I've used up all my time here. I think I have, but if I haven't, do you want me to keep talking? I'm not quite sure I'm following the court. We'll hear from the other side. Thank you. Good morning, Your Honor. May it please the Court, my name is James Markels, and I represent the attorney, Michael Davidson, who is present here in the courtroom today. He is now retired, and as far as I know, he is a long-term resident of Virginia. That shouldn't raise an issue as far as the intention of residency, affect subject matter, jurisdiction, whatever. Your Honor, I think the case that really answers the questions that you were asking, Mr. Hogue, earlier is the Jacobson v. Oliver case. That was a 12 v. 6 dismissal on statute of limitations grounds that this court affirmed in 2012. It's cited too in the pleadings. Specifically, this court found this was the issue of the plaintiffs had been abducted by terrorists and were making a claim of damages, I believe it was against Iran, and that they were led to believe later after they obtained default and obtained damages against Iran, then they sued their counsel for saying, well, you didn't let me know that we could go after also an arm of the Islamic State as well and seek selidium damages. And this court held that the passage of the Flatow Amendment as well as the subsequent court case, also Flatow, was a party to that as well. This court held that those established the inquiry knowledge necessary to stop the tolling of the statute of limitations, that the plaintiffs could not rely on not knowing beyond that point because those incidents put them on notice that they had these legal rights. Now, we're asking for even far less in this case. What about the you're relying on our interpretation of D.C. law, right? Yes, Your Honor. D.C. law applies here. Are there any later cases in the District of Columbia Court of Appeals that we should look at? Later than the Jacobson case? Yes. Your Honor, no. I don't think there's a subsequent case in D.C. applying D.C. law from 2012 on that speaks exactly to that issue. What about the reasonableness of the why isn't, as plaintiff's counsel argues, the reasonableness of the plaintiff's behavior in inquiry? A jury question, much like negligence, would be a jury question. Because here we're looking at the face of the complaint. You assume everything in the face of the complaint to be true as pled, almost like a summary judgment motion in that case. And here it is pled that Mr. Mouminian signed a precipice that said that the clerk shall dismiss with prejudice this action. Now, leaving aside whether or not with prejudice he understood that, it did not say only certain incidents of the case would be dismissed. It said this action. There could be no question about that. Suppose the evidence in this case or the complaint alleged that the plaintiff was specifically told by counsel, don't worry about the precipice and don't worry about the with prejudice. Some of your claims are still surviving. Your Honor, not only is that not in the complaint and hasn't been offered to be in the complaint. I understand. Please. When I ask a hypothetical, the worst answer possible is that's not this case. I understand. But you just gave the worst answer. But, Your Honor, the- Suppose that had been true. What would actually- Suppose that had been true. Suppose that was in the complaint. Well, it would have to- The counsel had told the plaintiff, don't worry about what the precipice said and don't worry about the dismissal. Some of your claims survive and I'm working on it. Under that, and I believe that's the Rocha case, which holds that if you have bad- If the lawyer gives false legal advice to the client, that is an issue of fact that would preserve the claim. That would toll the statute of limitations. So then, whether you talk about it as tolling or whether you talk about it as inquiry notice, it's really almost the same issue. Right. So why isn't the allegations in the complaint sufficient to do that? If there was discussions afterwards in which the lawyer said, I'm working on your case, I'm working on the problem, don't worry about it. Why isn't that the same thing? Well, there is no fraudulent concealment in this case because- No, no, no. We disagree. I understand. The tolling or fraudulent concealment and notice are a blend. But you're talking about the continuous representation, whether there was- No, I'm talking about whether or not the plaintiff was on notice. You say the documents alone put him on notice. And I say, well, suppose the lawyer subsequently said, don't worry about what the document says. I'm still working on the case. Okay. And in that case, then, what you have there is- What did the lawyer represent specifically that he was doing? The cases in which- What's the answer to my hypothetical? Well, the answer is, if the lawyer is also alleged- What's the answer to my hypothetical? Well, taking with nothing else, that might be plausible to get to a jury. But it would also require the lawyer to also allege that concrete action is being taken of some kind, as in, I'm about to file a complaint. So if the lawyer simply said, don't worry about what that document says. I'm working on the case. That would not be enough in your view? That would not be enough because it is not a definitive statement of work that is going to be taken, of some kind of action that is going to be taken. So you're not relying on the fact that counsel was representing the Mamanians in other matters. You're relying on the fact that the statement itself, even assuming this was their only matter, is too vague. That is correct, Your Honor. And, in fact, continuous representation has to be specific as to that matter. So statements as to other matters don't toll for continuous representation. How specific? What would count in your view? Well, there has to be a promise of some kind of action, some incident that is going to occur. What if you're at the stage of trying to decide what to do next or investigate whether- Indeed, there's a case like that. And there's- I want to get it right for you. Jones v. Latimer. That's the case where there was an email sent by counsel to the client saying, I've looked over your case. I think- and they had lost on appeal. And he says, I've looked over the appendix again. I've looked over the case. I really feel bad that this has ended up in a bad way. I think we have a chance to get this before the Supreme Court of the United States. I don't want to give up on this case. Let's have that conversation. Let's have that strategic conversation about what we do next based on where we are now. That is exactly what Jones v. Latimer- that was this court in 2014, another 12b-6 on statute of limitations grounds case that this court upheld. Actually, this case held that that email brought it within the statute of limitations. There's nothing equivalent here. What about the D.C. court cases? I saw there were a couple of cases that both you and counsel on the other side discussed. Do you think they're clear? I think they are clear, Your Honor, as to what is necessary. For instance, the Rocha case, that was the mesothelioma case. Which is the one where the three judges dispute three different opinions. That's Diamond v. Davis. Yes, that's one. Yes, and that is a confusing case. I must say I couldn't figure out what D.C. law was. Well, that was in 1996, and I think there has been some more case law since then. In D.C.? I believe so, Your Honor. Like Wagner v. Selinger, and that was in 2004. But I think it was the facts that made Diamond v. Davis so difficult. Because that was an issue of the- Well, I was trying to figure out just whether the reasonableness of inquiry was a jury question or not. That was the issue that I found difficult to determine under D.C. law. But Diamond v. Davis, you have two judges who said no, it was not. And ruled that on the face of it, as the facts had been developed, that it was not a jury question. That the three documents that came out before were sufficient to put Mr. Diamond on inquiry notice. So- What about the other case? I believe Wagner v. Selinger, that was the one involving a Med-Mal case where the- When the firm had been fired, the Med-Mal case was still going on. And so there hadn't been an accrual of an injury yet. Because once that case ended, then you had an actual case to bring. So those facts weighed- were much easier to, I think, discern. And that was in a 12 v. 6 case. But here, Your Honor, we have the face of the complaint. And the district court put the medians on notice right from the outset, right after the first complaint. Hey, on the face of this, you've got a statute of limitations issue. Because you filed in 2015, and it's very clear that your injury occurred in 2010 when you signed the precipice. I see that my time is up, if I may just briefly just say that he had a second chance to fix these, to put in the new information, the new allegations that would bridge that gap. And the best he could do is early 2012, which can't be read to get him to the May 7, 2012 that he wants. We're restricted to what's in the complaint. And I guess, like the district court, we can consider the material that is incorporated by reference into the complaint. Yes, Your Honor. What, if any, of that material shows that Mr. Davidson was representing the appellants on any legal matter that did not involve the subject property here? There's just an allegation that he was working, I think it's in paragraph 3 he talks about, or 4, he talks about how he, that my client had represented the Mominians in several matters. And then later, it's in paragraph 33, that's when they talk about how Mr. Mominian calls Mr. Davidson approximately every three months to talk about the Interdonado matter. Are you talking about paragraph 3 of the amended complaint? I think I'm wrong on, it's not paragraph 3. I don't have it in front of me. It's the paragraph where it introduces Mr. Davidson. So probably paragraph 4, where it is alleged. Represented plaintiffs in litigation in the superior court. Right. It references the further allegations of the complaint, which talk about this one case. Right. So that's all that's in the complaint, is that it doesn't go into detail about what these other matters were. It's just that in paragraph 33, it talks about that there are phone conversations about this matter and some other matter. And again, it doesn't work. It doesn't as well as another pending case. Right. And that he's working on it, which is indistinct as to what he's working on, but certainly isn't a promise of any specific action. Well, here's, we're supposed to determine plausibility at this stage, right? Right. Iqbal and Twombly. Yes. So the complaint doesn't allege anything or set forth any facts that say that when these conversations were happening, they were clearly related to some matter other than this litigation that you say had previously been settled, right? Correct. How can we, reading the complaint and taking the facts and inferences in the light most favorable to the plaintiff, say that any of these conversations did not involve the litigation against the inner denoters? I think we can, even if we assume it all had to do with this note and what was owed under this note and whatever litigation was going on with regard to this note, it still doesn't meet the test. Because the only two things, we have paragraph 32, which talks about the invoice that Mr. Davidson sent to the Dominions, which talked about meeting with an accountant and talking about the note. Not talking about litigation. It says an accountant, and it talks in those, that invoice is for work done in 2011 after the settlement, right? So 2011, we're still a year short. Okay, well, we're still a year short, but does that mean that as of 2011, it's plausible that they should believe that there's something still outstanding with this litigation? The invoice makes no mention. Give me a date. Give me a date as to when it's not plausible anymore for them to have a belief that this litigation is over. Our position is as soon as the percipient was signed. The percipient, on its face, said that. So the invoice doesn't do anything? The invoice doesn't talk about the litigation. All the invoice talks about is accounting on the note and meeting with an accountant. It doesn't talk about drafting any motion, any kind of complaint, any kind of issue with the court. And I don't think anyone reading that would think that there was a case going on at the time. But we don't know what the accountant was for. You want us to infer that it couldn't have been about this, but isn't that opposite of the way we're supposed to infer facts at this stage? If by this you mean a pending litigation, I think that's a bridge too far. But even if you consider it. Why is it a bridge too far? Because, Your Honor, a person can meet with an accountant to talk about what's owed under a note without there being litigation involved. All they're trying to do at that point is determine what's owed under the note. That's the very issue in the litigation. That's correct, Your Honor. However, there can be issues that come up after the litigation as to, well, did this get factored in? Or it could be an accountant meeting about. That's the very issue in the whole case. What was factored in and what was not. Right. And, again, as you've already. Mr. O'Brien had said explicitly that the settlement doesn't deal with some of the claims you have against the, whatever the, internados? Interternados, yes. Yes. You conceded earlier that would be problematic for you. I think there's a difference, though. The complaint that was filed by my client alleged that there were four payments that should have been credited and were not credited. The complaint filed by your client? The complaint filed by Mr. Davidson. There were four payments that should have been alleged. And to date, no other payments. There have been no other allegations of other payments that Mr. Mouminian says, that payment I made and should have been credited. These are the only four that have ever been alleged. And it is clear, especially when you look at the recorded, and actually specifically if you look at pages, I'll get you the pages shortly. While you're thinking about that, what about the recorded conversation? Your client did make a statement there that was troubling, wasn't it? No, Your Honor. I think there's a misunderstanding. A misunderstanding as to what the statement meant? Yes, because. What was the statement? What was the statement? Well, he said. What was the statement? I don't have the exact quote on me, but. Well, that's sort of important, isn't it? Well, but the intent, what was stated, was when, if later on, the Interim Donato would bring a claim and say, you need to pay amounts under this note, you're in default, there would still be defenses there available with the Mouminians as to, you still have to prove up, Mr. Interim Donato. That's your interpretation of the statement. What was the statement? The exact statement. Let me see. Well, he said you did not forfeit any of your rights on that. That's right. And that, meaning the lawsuit. Well, he did not forfeit any of his rights to. I read that to refer to the lawsuit. No, as to the note, as to what is owed under the note. Which was the lawsuit. Well, but also what's stated in the recorded conversation is that Mr. Davidson tells Mr. Mouminian, you know those four payments, we looked at, do you remember, Mr. Mouminian, we looked at his ledger and all of those payments had been credited. All the payments that are alleged in the amended complaint, those were already credited to you. And Mr. Mouminian says, yeah, that's right. So the reaction from my client was, well, we need to settle for the $15,000 because the only thing that hadn't been credited were back taxes that you had paid that Mr. Interim Donato did not credit you for. And that's how they got to the $15,000. It wasn't even something alleged in the complaint. They went beyond the complaint and found this other credit that he was entitled to and that's what they settled it for. Well, did the district judge listen to the recording? I don't believe so. I think only the transcript was submitted to the court. Isn't that problematic? As in, is there additional meaning? You think there might be additional meaning? I'm an old trial lawyer. Recovering, you know, trial lawyer. The transcript was never. I stipulate he's old. And recovering. The transcript is never the evidence in the trial. It's always the recording. A lot of times the transcripts aren't even introduced. The jurors might see them as an aid while they're listening to the recording, but they don't even go back in the jury room. Why should this case be decided by reading a transcript and not even having listened to what the real evidence is of something that was incorporated by the complaint? I don't think the transcript materially changes the situation, the problems that are inherent in the complaint. Nothing in the transcript transforms any of the payments that are listed therein into credits that were not made against the note, because they were. In fact, the recorded transcript only affirms that. There's no cause of action here because the only credits that Mr. Muminian We're arguing here about the meaning of a statement, and you're saying that the transcript shows that the statement meant this, or your brother on the other side says, no, it really means that. Those kinds of things are resolved by listening to the recording, not by arguing about how you read words on a dead page. But we don't have to even take the transcript in my favor. Even under the terms of the complaint, the four payments that have been alleged that should have been credited don't meet muster because three of them came before the January 1, 2002 note modification agreement, which by its terms is alleged in the complaint, specifically states that it incorporated all prior. Well, that's a question of contract interpretation that the district judge did not pass on, and that it's not, it would be awkward for us to pass on that. I mean, the Muminians are saying that means something different. It echoes their underlying claim, which is all issues between us on this part of the dispute, not on the entire dispute. So I'm not sure that's it. Your Honor, I have gone way over my time. You have, thank you. We'll hear briefly from Mr. Hogan, rebuttal. We took some of your time questioning on direct, and so we'll give you another minute. Thank you. I think Judge Wilkins had precisely the correct question, which is, what date did it become clear to the Muminians that they had a claim against Mr. Davidson? And the real problem with the trial court's ruling is that he does not point to any such date. No such date is identified. He talks about an 18-month period between the filing of the precipice and the time of the notice of foreclosure. Now, wait a minute. Suppose 10 years had elapsed. Suppose 10 years had elapsed. And the district judge said, I don't know what date this action occurred, but it sure as hell didn't last for 10 years. Would you still say there was a reversal error because the judge didn't identify the date? You know, I think that it's a matter of reasonableness here. I have to tell you that there are some judges that I'm aware of in some of the courts of this jurisdiction that have taken as long as 8 and 10 years to make decisions on cases. No, no, that's not the same question. Well, I understand. You know, there's a rule of reasonableness, but 18 months, I would submit, clearly falls within the area of can you honestly say as a matter of law that Mr. Muminian had some obligation in an 18-month period to double-check what his lawyer was telling him via the invoice that's alleged in paragraph 32 and via the conversations, the regular conversations, that the case is still ongoing, that he had to himself try to check the docket or contact another lawyer for a second opinion. And, you know, I'm not sure what the bright line is between 18 months and 10 years, but I would say that they would have a better argument of it if they were in a 10-year period than an 18-month. I also want to just mention that the Wagner v. Selinger case that Mr. Gillian has discussed as later law from the District of Columbia after the Diamond case in 2004 actually supports our case. We cited it in our brief. Okay, Mr. Hogue. Thank you. The case is submitted.
judges: Pillard, Wilkins, Silberman